[Cite as *State v. Parker*, 2012-Ohio-362.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96941**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**DONELL PARKER**

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-337574

BEFORE:   Rocco, J., S. Gallagher, P.J., and Keough, J.

RELEASED AND JOURNALIZED:   February 2, 2012

**ATTORNEY FOR APPELLANT**

Paul Mancino, Jr.
75 Public Square
Suite 1016
Cleveland, Ohio   44113-2098

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Mark J. Mahoney
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

KENNETH A. ROCCO, J.:

{¶ 1}   Defendant-appellant Donell Parker, who is serving a prison sentence for his convictions for aggravated murder and aggravated robbery with firearm specifications, appeals from the trial court order that denied his motion for a new trial following an oral hearing on the motion.

{¶ 2}   Parker presents four assignments of error.  He asserts the trial court acted improperly in failing to force witness Clifton Cousins to testify, in determining that Cousins's affidavits were not credible, in denying Parker's motion on that basis, and in refusing to set his case for retrial.

{¶ 3}   Upon a review of the record, this court cannot agree with any of Parker's assertions.  Consequently, his assignments of error are overruled and the trial court's order is affirmed.

{¶ 4}   This court previously set out the facts surrounding Parker's convictions in *State v. Parker*, 8th Dist. No. 71474, 1998 WL 166170 (Apr. 9, 1998),  ("*Parker I*"). They are briefly summarized as follows.

{¶ 5}   Parker's convictions resulted from an incident that occurred on April 24, 1987 in the area of W. 76th Street and Lorain Road in Cleveland.  A young male assailant shot the victim, Robert Letson, as Letson waited in his car for his two female companions to come out of their sister's apartment.  Letson later died from his wound; the wound had been inflicted by a gun that was either a .38 caliber or a .357 caliber weapon.

{¶ 6}   Although the assailant had been seen running into a residence located at 7732 Lorain Road, no one there whom the police interviewed during the investigation of the murder informed the officers that Parker also lived at that address.  Parker's identity remained unknown until December 1995.

{¶ 7}   In December 1995, Parker's mother approached the police and told them Parker had confessed to her soon after the incident that he "robbed a man who was sitting in a car" and then "shot him."  Parker's mother stated that she had protected Parker for nearly nine years, but decided to come forward because he assaulted her and threatened to

kill her. Once police detectives had Parker's name, they were able to assemble other evidence that tied him to the shooting.

{¶ 8} In 1996, Parker was brought to trial; after considering the evidence obtained by the state, a jury convicted Parker of aggravated murder and aggravated robbery. The trial court imposed a sentence of three years for each firearm specification, to be served consecutively with consecutive terms of 30 years to life for aggravated murder and 10 to 25 years for aggravated robbery.

{¶ 9} In *Parker I*, this court affirmed his convictions, finding that they were supported by the manifest weight of the evidence, that the trial court committed no error in either admitting testimony or instructing the jury, and that Parker's trial counsel rendered effective assistance. The Ohio Supreme Court subsequently declined to accept Parker's appeal from this court's decision. *State v. Parker*, 82 Ohio St.3d 1480, 696 N.E.2d 1087 (1998) (Table).

{¶ 10} Parker also sought to reopen his appeal, but this court declined to grant his application. *State v. Parker*, 8th Dist. No. 71474, 1998 WL 564056 (Apr. 9, 1998). Thereafter, the Supreme Court again did not accept Parker's appeal from this court's decision. *State v. Parker*, 84 Ohio St.3d 1427, 702 N.E.2d 903 (1998) (Table).

{¶ 11} In December 2008, represented by new counsel,[1] Parker filed a motion for a new trial based upon "newly discovered evidence."[2] Parker asserted that he had obtained

---

[1]Appellate counsel herein.

evidence he was "actually innocent" of the crimes, because another man, Clifton Cousins, had confessed to murdering Letson. Parker attached to his motion two notarized affidavits in which Cousins claimed to have shot Letson.

{¶ 12} In pertinent part, the relevant portions of Cousins's two affidavits contain the following nearly identical statements:[3]

{¶ 13} "* * * On April 24, 1987 * * * 2:30 to 3:00 a.m. at night, there were no street lights [on] I saw a white man in a Chevette or red Pontiac 1000 2 door with 2 white girls around the ages of 26 get out of the [car] about 77 in [sic] Lorain. The white man [dude] was parked on the left hand side going down Lorain, I walk [walked] up from the back of the car coming down Lorain I opened the car door * * * with intent to rob the man but I panicked [he heard me] so I shot him [once] in the stomach area one time with a .38. I [then] ran across the street through a [dark] parking lot that was dark into this alley where I jumped in my car and drove off. * * * .

{¶ 14} "They have an innocent man Donell Parker * * * incarcerated for my actions. [The man you currently have as a client is very innocent of the charges.] * * * ."

---

[2]Parker combined the motion with a "petition for postconviction relief," but presented no argument with respect to such a petition.

[3]Bracketed language is taken from the second affidavit.

{¶ 15} Cousins claimed in both of his affidavits to have killed "a lot of people" who were haunting him. He indicated he wanted to clear his conscience so he could sleep at night and to give the victims' "loved ones" the "truth" about what happened.

{¶ 16} The state filed an opposition brief to Parker's motion, arguing that Parker's motion failed to comply with Crim.R. 33's requirements. The state later supplemented its response with supporting documentation. Only one of these documents was notarized, viz., the affidavit of Steven Dever, the assistant prosecutor who had brought Parker's case to trial.

{¶ 17} Dever averred in pertinent part that he also had prosecuted two homicide cases against Cousins, who "murdered * * * his victims by strangulation." Dever further averred that Cousins had confessed "to more than thirty homicides of women in various places in the United States," and that he had a "pattern of admitting to his personal involvement in numerous homicides" but then retracting his admissions, and that Cousins had never been prosecuted for homicide in any cases except those that Dever prosecuted.

{¶ 18} The trial court took no action on Parker's case until Parker filed a motion in September 2010 seeking a "status hearing." Eventually, the trial court scheduled a hearing on Parker's motion for a new trial; the court ordered Cousins to be present.

{¶ 19} The hearing took place on May 18, 2011. However, when Parker's counsel called upon Cousins to testify, Cousins invoked his right against self-incrimination and declined to answer any questions. Cousins's refusal to provide any evidence prompted

Parker's counsel to request of the prosecutor to give Cousins immunity, but the prosecutor indicated that would not be possible. Parker thus relied solely upon Cousins's affidavits to support his motion for a new trial.

{¶ 20} In response, the prosecutor indicated that Cousins had "a documented history of mental illness" and had "made outrageous claims in the past." The prosecutor, however, offered no evidence to substantiate these statements.

{¶ 21} At the conclusion of the hearing, the trial court stated that it had "reviewed the motions [sic], the transcript of the original trial, a letter sent by Mr. Cousins to the Court, and the arguments of counsel here, and the affidavits that have been provided," but had heard no "credible evidence" to substantiate Parker's assertions. The trial court, therefore, denied Parker's motion for a new trial.

{¶ 22} Parker appeals from the trial court's decision and presents the following four assignments of error.

{¶ 23} "**I. Defendant was denied due process of law when the court allowed the witness, Clifton Cousins, to invoke his right of self-incrimination.**

{¶ 24} "**II. Defendant was denied due process of law when the court ruled that the affidavits of Clifton Cousins were not credible.**

{¶ 25} "**III. Defendant was denied due process of law when the court overruled his motion for a new trial when defendant presented evidence of actual innocence.**

**{¶ 26} "IV.   Defendant was denied due process of law when the court failed to reset his motion for a new trial [sic]."**

{¶ 27} In his first assignment of error, Parker argues the trial court should have ordered Cousins to testify.   Parker asserts that Cousins "was not entitled to invoke the Fifth Amendment" of the United States Constitution after he submitted his incriminatory affidavits.   As authority for his position, Parker cites *Mitchell v. United States*, 526 U.S. 314, 326, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999).   Parker's assertion is insupportable.

{¶ 28} In fact, *Mitchell* does not stand for the proposition of law Parker presents. The Supreme Court in *Mitchell* stated that the *defendant* "may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details [upon cross-examination]."   *Davis v. Straub,* 430 F.3d 281 (6th Cir.2005), at fn. 5, quoting *Mitchell* at 321, 119 S.Ct. 1307.   *Mitchell* not only "dealt with different issues" than the one presented by Parker herein, but also supports the trial court's action in this case.   *Id.*

{¶ 29} The United States Supreme Court has *not* held "that a witness's privilege against self-incrimination must yield in favor of the defendant's right to put on his defense, because the Court did not consider a *witness's* invocation of the privilege." (Emphasis added.)   *Id.*, citing *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).   Thus, addressing a similar argument as the one Parker presents in his

first assignment of error, the court in *United States v. Staplton*, 297 Fed.Appx. 413 (6th Cir.2008) noted in pertinent part:

> The fact that a witness decides to invoke his or her Fifth Amendment right not to testify does not deny the defendant seeking to call that witness a fair trial. "*Washington v. Texas* [388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)] does not hold that a defendant has the right to present any and all witnesses." *Davis,* 430 F.3d 281, 290. As the Supreme Court stated in *Washington*, "Nothing in this opinion should be construed as disapproving testimonial privileges, such as the privilege against self-incrimination[.]" *Id.*, 388 U.S. at 23 n. 21, 87 S.Ct. 1920.

{¶ 30} At any event, Parker never asked the trial court to compel Cousins to testify. Parker's first assignment of error, accordingly, is overruled.

{¶ 31} Parker's second, third, and fourth assignments of error challenge the trial court's decision to deny his motion. Parker argues, in essence, that he presented evidence sufficient to warrant a new trial. This court disagrees.

{¶ 32} The decision whether to grant or deny a motion for new trial on the basis of newly discovered evidence is one that is committed to the sound discretion of the trial court. *State v. Matthews*, 81 Ohio St.3d 375, 691 N.E.2d 1041 (1998). Therefore, an appellate court will not reverse a trial court's denial of a motion for new trial absent an abuse of that discretion. *State v. Hawkins*, 66 Ohio St.3d 339, 350, 612 N.E.2d 1227 (1993). An abuse of discretion is more than a mere error in judgment; it implies that a court's ruling is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 33} A defendant seeking a new trial based on the grounds of newly discovered evidence bears the burden of demonstrating to the trial court that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947); *Hawkins* at 350.

{¶ 34} In determining whether to accept affidavits submitted in support of a motion for a new trial as true statements of fact, a trial court is permitted to weigh the credibility of the affidavits. *State v. Coleman*, 2d Dist. Nos. 04CA43 and 04CA44, 2005-Ohio-387, 2005 WL 1797040.

{¶ 35} The trial court should consider all relevant factors in assessing credibility; the relevant factors include:

> (1) whether the reviewing judge also presided at the trial, (2) whether multiple affidavits contain nearly identical language, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiant is a relative of the defendant, or is otherwise interested in the success of the defendant's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, the court may find sworn testimony in an affidavit to be contradicted by evidence in the record * * *, or to be internally inconsistent, thereby weakening the credibility of that testimony. *State v. Calhoun*, 86 Ohio St.3d 279, 285, 1999-Ohio-102, 714 N.E.2d 905.

{¶ 36} "One or more of the *Calhoun* factors, to the extent that any of them apply, may be sufficient to justify a conclusion that an affidavit asserting information outside the

record lacks credibility." *State v. Taylor*, 8th Dist. No. 88020, 2007-Ohio-825, 2007 WL 613894, ¶ 17.

{¶ 37} In this case, the trial court determined that Parker's evidence did not disclose a strong probability that it would change the result if a new trial were granted. *Id.* The trial court based this determination on its assessment of the credibility of Cousins's affidavits. This court cannot conclude the trial court abused its discretion in making this determination.

{¶ 38} A comparison of Cousins's affidavits to the evidence shows that the facts Cousins related in the affidavits all were facts that could be found in the public record. Cousins presented no facts that only the assailant would know, and provided no explanation for why he would have been in the neighborhood of the incident on the night when it occurred. *Compare State v. Gaines*, 1st Dist. No. C-090097, 2010-Ohio-895, 2010 WL 877549.

{¶ 39} Moreover, Cousins's two affidavits contained such a "nearly identical" recitation of the incident that the trial court could conclude Cousins merely made a shortened version of the first affidavit when he created the second affidavit. Cousins's professed reasons for coming forward so many years after the incident were flimsy at best. Furthermore, his failure to give any details of his other efforts to atone for his "killings" indicated an absence of truth to his claims. *Coleman*.

**{¶ 40}** It must also be noted that, at the hearing on his motion, Parker could have pointed out to the trial court that Cousins's appearance bore a similarity to a description of the shooter given by one of the state's trial witnesses, but he did not. Under these circumstances, this court is not inclined to find the trial court abused its discretion in this case.

**{¶ 41}** For the foregoing reasons, Parker's second, third, and fourth assignments of error are overruled.

**{¶ 42}** The trial court's order is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

SEAN C. GALLAGHER, P.J., and

KATHLEEN ANN KEOUGH, J., CONCUR